*Harlan & Craddock* for plaintiff.

MOORE, &c.
*vs*
MOBERLY.

levy, the damages should be assessed proportionate to the injury, not the amount of the execution, unless such has been the extent of the injury to plaintiff.

7bm299|
124   612|

## Moore, &c. *vs* Moberly.

ERROR TO THE MONTGOMERY CIRCUIT.

*Mortgages.   Sureties.   Contribution.   Parties.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

IN February, 1841, James B. Moore being indebted to T. J. Moberly, by note, in a considerable sum, and owing

CHANCERY.

*Case* 83.

*June* 25.

Case stated.

many other debts in which Moberly was his surety, either alone or jointly with others, executed to Moberly a mortgage upon land and other property, reciting as the consideration of the conveyance, that Moberly was his surety to divers persons not named, and also that he was indebted to him as above stated. The condition of the deed is, that it is to be void if Moore pays to Moberly the amount due him as aforesaid, and pays and satisfies all the debts for which Moberly is his surety, and in all respects keeps said Moberly harmless and free from expense. And Moberly is empowered to sell any of the mortgaged property to pay himself the amount due him, and to raise money to pay off those debts for which he is bound as surety. In April and May, 1841, J. B. Moore assigned to Moberly and L. Moore, who were co-sureties for him in many debts, certain receipts of attorneys or others, evidencing pecuniary demands in favor of the assignor. Some of these assignments purport to be for value received, but they do not otherwise designate any particular purpose or motive, and there was no direction, either verbal or written, as to the disposition to be made of the funds. Nothing was paid or settled as the consideration of the assignment; and the only basis for implication as to its purpose and motive, is found in the facts, that the assignor was greatly indebted; that Moberly was his creditor and also his surety, so far as appears, in all his other debts; that in some he was the only surety, and in others he and L. Moore, the other assignee, were sureties, either alone or with others.

Moberly received the entire proceeds of the mortgage, and also a considerable portion of the fund assigned to him and L. Moore. But the aggregate of these receipts falls far short of the aggregate of his payments for J. B. Moore, including the debt to himself and those in which he was sole surety, as well as those in which he was bound as surety with others.

L. Moore also received a portion, and as we assume, the residue of the fund assigned to him and Moberly, but paid more than he received, in discharge of debts in which he and Moberly, with others, were sureties.

The debtor, J. B. Moore, has no property to be appropriated towards the satisfaction of the claims against him. And Moberly having filed his bill to obtain contribution for equalizing his loss, the question is presented as to the proper application and distribution of the fund realized under the mortgage and assignment, and as to the liability and rate of contribution to which the other parties are respectively subject.

1. The mortgage being made to Moberly alone, places the legal title and the immediate control of the property in his hands. But the whole instrument shows that he has the title for the benefit of others as well as himself. The condition is for the payment of the debts in which he is surety, as well as of those in which he is creditor; and the power of sale is equally comprehensive in its objects. There is no full performance of the duties of the trust, nor satisfaction of the expressed objects of the deed, until all the debts referred to are paid, or the mortgaged property exhausted by fair appropriation. The mortgage in this case is, therefore, a security for the debts in which Moberly was surety, as well as for that in which he was creditor; and as no discrimination is made, it is equally a security for all. He might, with the assent of the debtor, have secured a precedence to his own demand. But having failed to do so, the mortgage must be understood as intending to place all the debts in which he was interested, on the same footing, and as entitling each to its *pro rata* share of the security. As the indemnity was provided for the satisfaction of all the debts referred to, without discrimination, and might have been resorted to for that purpose by all, and should, if sufficient, have been applied to the full satisfaction of all, so upon its proving insufficient, the loss should fall proportionally upon all, and all should participate proportionally in the benefits.

If no part of the mortgage debts had been paid, and all the creditors were before the Court for the appropriation of the common indemnity, it would on these principles, be distributed among them in proportion to the several amounts of their respective debts. To the extent that payment had been made by a surety, he would be

MOORE, &c.
*vs*
MOBERLY.

The object of the bill.

A debtor mortgaged property to a creditor who was also a surety for the mortgagor separately in some cases, and jointly with others in other cases, the mortgage to be void on the payment of the debts to the mortgagee, and satisfying all the debts in which the mortgagee is surety, and keeping him free of expense, the mortgagor assigned to the mortgagee and another surety, moneysecurities assumed to be for the same ob. ject.—Held that the security should be appropriated to the *pro rata* payment of all the debts, as well that due the mortgagee as those for which he was surety.

In such case, if no part of the debts secured by the mortgage had been paid and all the creditors before the Court, a *pro rata* distribution would have been proper in

MOORE, &c.
*vs*
MOBERLY.

case of a deficit, and the debts were in part paid by the sureties, they or either should be substituted to the place of the creditors, the mortgagee will thus receive only his *pro rata* of his own debt with other creditors.

entitled to occupy the place and enjoy the right of the particular creditor, receiving his *pro rata* share of the indemnity, and leaving the residue of his payment as a loss to be borne by himself, if he were sole surety, or to be equalized by contribution from his co-sureties, if there were any bound for the particular debt. His co-sureties being thus relieved from the burthen of contribution to the extent that the indemnity is applied to their debt, would partake in this manner of the benefit of the indemnity. And they have a right thus to participate, which a Court of Equity will regard and enforce.

According to this view of the case, Moberly had a right to apply towards the satisfaction of his separate debt, and of the demand arising from his payments as sole surety of the mortgagor, so much of the fund realized from the mortgage as would fall to the share of these when compared with the whole amount of debts secured by the mortgage. And as his payments of debts in which he was only a co-surety with others, place him precisely on the same ground, the result is, that he is entitled to claim on account of his own debt, and of the payments made as surety, whether sole or joint, only a rateable share of the mortgage fund, bearing the same proportion to the whole fund, that his entire demand compounded as above, bears to the aggregate amount of debts referred to in the mortgage. And this indemnity should be distributed rateably among the several debts which make up his claim, whereby the loss upon each debt being ascertained, may be distributed if there be others subject to it.

The case of *Moore* vs *Moore*, in the Supreme Court of North Carolina, (4 *Hawks*, 358,) referred to in opposition to the principles thus applied to the case before us, decides that where one surety had willingly entered into the engagement without indemnity, and upon additional surety being required before the bond was accepted, the other refused to go in without indemnity, and the mortgage was made to him alone, (but conditioned to pay the debt by the principal,) with the first surety as a subscribing witness. These circumstances excluded the presumption of a community of burthen and of means and

The case of *Moore* vs *Moore*, (4 *Hawks' N. C. Rep.*) distinguishable from this case.

efforts for relief, and therefore that the first surety was not entitled to equal benefit from the mortgage, and that each having paid one half of the debt for which they were bound as sureties, the first could not call upon the second for contribution, although the latter may have realized the indemnity to the extent of his payment; and that at most the first surety could only claim for his own reimbursement, the excess of the mortgage fund after the second was fully satisfied. The propriety of the decision in reference to the particular case, may perhaps be questionable. It does not, however, controvert, but rather admits that, except under special circumstances, the principle of equality among co-sureties will prevail as corresponding with the presumed intention as indicated by the mutuality of interest and duty, and it does not deny, but rather admits that the mortgage though made to the surety, was available to the creditor.

The cases of *Bronston* vs *Robinson*, (4 *B. Monroe*, 142;) *Waller* vs *Tate*, (*Ibid*, 531,) and other cases, show that a mortgage by a debtor to indemnify his surety in a particular debt, is in effect a surety for the debt, and available as such to the creditor. The cases of *Morrison* vs *Poyntz*, (7 *Dana*, 307;) *Clay* vs *Goodloe*, (6 *B. Monroe*, 236, &c.,) show that the property thus mortgaged to one of several co-sureties in several debts is, in the absence of special circumstances, to be applied as if still the property of the debtor, to the exhoneration of all, by a *pro rata* payment or reimbursement of the several debts, leaving the deficit of each to be made up by contribution. They are therefore referred to as sustaining the rule above laid down for distributing in this case the benefit of the mortgage and the burthen of contribution. Moberly must lose on his separate claim for his own debt, and for payments as sole surety of J. B. Moore, in proportion to the amount of that claim compared with the total amount of debts and the whole loss thereon. And we perceive no principle on which he can compel his co-sureties and co-beneficiaries of the mortgage fund, to make up to him the deficiency of that fund, except so far as they are bound with him to bear the common burthen

A mortgage, by a debtor to his sureties, is in effect a security for the debt. (4 *B. Monroe*, 142; *Ibid*, 531;) so a mortgage to secure several co-sureties is, in the absence of special circumstances, to be applied as if still the property of the debtor. (7 *Dana*, 307; 6 *B. Mon.* 206.)

MOORE, &c.
*vs*
MOBERLY.

*In suits for contribution among sureties, all interested are necessary parties.*

of the common debts, after applying to them a rateable share of the common indemnity.

2. The funds arising from the assignments to Moberly and L. Moore, stand, in our opinion, on precisely the same footing as those raised from the mortgage. The assignments were clearly in trust for the payment of debts, and there being no designation of any particular debt to be paid, it must be regarded as a fund for the payment of such debts at least as the assignees, or either of them, were interested in. There is no sufficient presumption that it was intended to exclude those debts in which one of the assignees was alone concerned, any more than that the mortgage was intended to prefer those debts in which the mortgagee was alone interested as creditor or sole surety. The two funds are therefore to be considered, for the purposes of this case, as constituting one fund, to be applied or distributed *pro rata* among the several debts or classes of debts referred to, and leaving the residue of each debt or class as a loss to be borne rateably by the several sureties therein, if there be several, or by the single surety where there is but one, or by the creditor where there is no surety.

3. The right of L. Moore, in consequence of payments made by him, are the same as those of Moberly, arising in the same way; and each being liable to contribute to the other, a comparison of these liabilities will ascertain the sum to be decreed against the one or the other. The other parties having no claims of this kind, are liable to contribute to the party (Moberly or Moore) who may have made payments for them respectively, in proportion to the loss arising on such payments, after applying the indemnity.

4. By the decree the defendants were compelled, not only to pay to Moberly the sums indicated by the rule of contribution above laid down, but also to make further contribution for equalizing or reducing the loss upon his separate claim, after applying thereto its rateable proportion of the indemnity. The decree being thus too favorable to Moberly, cannot be reversed on his cross errors, which are, in effect, overruled by the foregoing opinion. But for the error of decreeing against each of the defend-

:ants more than his rateable share of the loss in the debts in which he was surety, the decree is reversed and the ·cause remanded for a decree to be rendered in conformity with this opinion.  It being understood that this mandate does not preclude either party from pointing out, nor the ·Court from correcting any error of ·calculation or distri.bution in that part of the commissioner's report which .seems to conform to the rule herein laid down; and it will be proper, upon the return of the cause, to bring be.fore the Court as parties, Munday and Bush, who appear .to have been sureties in some of the debts .paid by L. Moore, and who being interested in the proper applica.tion of the indemnity, and personally :bound to contri.bute, ought to be bound .by the decree, and are, therefore, proper parties, though no contribution is now sought .against them.

*Eginton* for ·plaintiffs ; *Apperson* for defendant.