## CINCINNATI, HAMILTON AND DAYTON RAILWAY COMPANY v. ARMUTH.

[No. 22,535. Filed December 19, 1913.]

1. NEGLIGENCE.—*Proximate Cause.*—*Definition.*—Proximate cause is that which immediately causes, or fails to prevent, an injury that might have been reasonably anticipated to result from the negligence charged, and without which the injury would not have occurred. p. 677.
2. NEGLIGENCE.—*Proximate Cause.*—*Anticipating Result.*—To render a negligent act or omission the proximate cause of an injury,

VOL. 180—43

it is not necessary that the particular or actual consequences were to be anticipated, but it is sufficient if the accident could not otherwise have happened. p. 678.

3. MASTER AND SERVANT.—*Factory Act.*—*Construction.*—The statute (§8029 Burns 1908, Acts 1899, p. 231, §9) providing for the regulation of machinery and for the guarding of cogs, etc., is remedial and should at least receive such construction as the reasonable intendment of its enactment discloses. p. 678.

4. MASTER AND SERVANT.—*Injuries to Servant.*—*Proximate Cause.* —*Factory Act.*—Where a factory employe suffered an injury by his hand slipping from a lever into unguarded cogwheels, the fact the cogwheels were not guarded as required by §8029 Burns 1908, Acts 1899 p. 231, §9, providing for the regulation of machinery and the guarding of cogs, etc., must be deemed the proximate cause of the injury, since the duty to guard is mandatory, and injury was reasonably to be anticipated from a failure to do so, and but for the absence of the guard the slipping of the hand could not have caused such injury. p. 678.

5. NEGLIGENCE.— *Proximate Cause.*— Proximate cause and primary cause are not synonymous, since the proximate cause of an injury is not necessarily the primary cause, but the producing cause or cause but for which the injury could not have occurred. p. 680.

6. MASTER AND SERVANT.—*Injuries to Servant.*—*Contributory Negligence.*—*Jury Question.*—It cannot be said as a matter of law that an employe was guilty of contributory negligence in letting his hand slip from a lever he was operating so as to come in contact with unguarded cogwheels. p. 681.

7. MASTER AND SERVANT.—*Injury to Servant.*—*Instructions.*—*Conformity to Evidence.*—In a servant's action against the master for personal injuries, where there was evidence from which the jury could infer a loss of time and expense incurred for treatment, but no evidence as to the amount or value, an instruction in which the jury was told that it could consider "the expense, if any, in the treatment of such injuries, and loss of time, if any, resulting as a direct effect of such injuries, and from a consideration of the elements enumerated, only as shown by the evidence, it could assess the recovery at an amount to compensate him," etc., was erroneous as authorizing the jury to consider such elements with no basis for fixing the damages, and must be deemed to have been prejudicial. pp. 681, 684.

8. MASTER AND SERVANT.—*Injuries to Servant.*—*Complaint.*— *Amendment to Conform to Evidence.*—A complaint in a servant's action which merely alleged generally that the injury necessitated the amputation of the third and fourth fingers, render-

ing him a cripple for life, to his damage, etc., is broad enough to authorize proof of loss of time and expense of treatment, and on the admission of such evidence without exception, the complaint will be deemed amended to conform thereto.  p. 683.

9.  MASTER AND SERVANT.—*Injuries to Servant.—Practicability of Guarding Machine.—Evidence.—Harmless Error.*—In a servant's action for injuries to his hand by reason of unguarded cogs, it was error to admit evidence that after the accident defendant guarded said cogs, even under instructions that it was to be considered solely for the purpose of showing that a guard could be placed without impairing the efficiency of the machine, but in view of the fact that no defense of impracticability was made, and the uncontradicted evidence that there was no guard at the time of the injury, and showing the construction of the machine, the error was harmless.  p. 685.

From Superior Court of Marion County (82,285) ; *Joseph Collier*, Judge.

Action by Henry F. Armuth against the Cincinnati, Hamilton and Dayton Railway Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.)  *Reversed.*

*John B. Elam, James W. Fesler* and *Harvey J. Elam*, for appellant.

*George W. Galvin*, for appellee.

MYERS, J.—Action by appellee against appellant for personal injuries while working in appellant's machine shop in Indiana. Complaint in one paragraph and answer in general denial. The errors assigned are predicated on error in overruling appellant's motion for judgment *non obstante,* and in overruling its motion for a new trial. Appellee's injury was occasioned by his hand slipping from a lever with which the motion of a drill was controlled, into an alleged unguarded iron gearing which it is alleged could have been guarded at small cost without impairing its practical usefulness. The jury found in answer to interrogatories that the accident and injury to appellee was caused by his hand slipping from the handle of the lever while

he was undertaking to operate it, into the cogs, a distance of about eight inches from the handle of the lever; that the cogs were not covered in any way, and that there was no evidence as to whether appellee took a firm hold of the handle, or whether if he had it would have slipped off, or as to the pressure required to work the lever, except that it would move with a pressure about equal to that of a man's hand, and that there was no evidence that it required five pounds pressure to move it; that the limit of movement of the lever was about five and one-half inches from a perpendicular, to the left, away from the cogs, and back to the right to a perpendicular, and it moved easily; that the cogs meshed together about twelve inches from the floor, and the lever was about fourteen and one-half inches long, with a handle at the top, and he operated it about six times a day. Appellee had worked at the machine continuously from April 1, to July 7, 1910, the date of his injury. There were eight cogwheels of different diameters, four on the lower shaft meshing into four on the upper shaft, but on four different alignments, owing to the differing diameters of the wheels above and below the cogs which meshed together. Appellee lost the third and fourth fingers, by the accident.

It is appellant's contention that it was not the unguarded condition of the cogs, as shown by the findings, but the slipping of appellee's hand, which constituted the proximate cause of the injury, and that he was culpably negligent in allowing his hand to slip into the cogs. Reliance is placed by appellant on *Hattaway* v. *Atlanta Steel, etc., Co.* (1900), 155 Ind. 507, 58 N. E. 718; *P. H. & F. M. Roots Co.* v. *Meeker* (1905), 165 Ind. 132, 73 N. E. 253, and *Crawford & McCrimmon Co.* v. *Gose* (1909), 172 Ind. 81, 87 N. E. 711. It is to be said as to the first of these cases, that it arose prior to the enactment of the factory safety act. The two latter cases were expressly overruled on the point under consideration in *King* v. *Inland Steel Co.* (1912), 177 Ind.

201, 96 N. E. 377, 97 N. E. 529. See, also, *Inland Steel Co.* v. *Ilko* (1914), 181 Ind. —, 103 N. E. 7.

The opinion in the Meeker case was written by Mr. Justice Hadley, who also wrote the opinion in *United States Cement Co.* v. *Cooper* (1909), 172 Ind. 599, 88 N. E. 69. In that case the accident occurred by Cooper stumbling and throwing his foot in the conveyor. When the Gose case was decided, the writer of this opinion had not had occasion to examine the Meeker and Sullender cases, but when the Cooper case came on, he took strong ground as to the doctrine of those cases, and the application of the *ejusdem generis* rule in *Laporte Carriage Co.* v. *Sullender* (1905), 165 Ind. 290, 75 N. E. 270. The result was a different view by the court, in the Cooper case, and conformity of that decision with *Bessler* v. *Laughlin* (1907), 168 Ind. 38, 79 N. E. 1033, as distinguished from the Meeker and Gose cases, and I am still persuaded with the better reason. In the late case of *Balzer* v. *Waring* (1911), 176 Ind. 585, 95 N. E. 257, the facts gave rise to something other than the unguarded machinery as the proximate cause of injury, and were stronger than in the case at bar, but this court there said "Proximate cause is the act that immediately causes, or fails to prevent, an injury that might reasonably have been anticipated would result from the negligent act or omission charged, and without which such injury would not have occurred. The test is to be found in the probably injurious consequences that were to be anticipated, and not in the number of subsequent events or agencies that might arise to bring about such consequences." See cases there cited. To the same effect are *Cleveland, etc., R. Co.* v. *Powers* (1909), 173 Ind. 105, 118, 88 N. E. 1073, 89 N. E. 485; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, 73 N. E. 899; *Indianapolis St. R. Co.* v. *Schmidt* (1904), 163 Ind. 360, 71 N. E. 201; *Evansville Hoop, etc., Co.* v. *Bailey* (1909), 43 Ind. App. 153, 84 N. E. 549; *Tucker & Dorsey Mfg. Co.* v. *Staley* (1907),

40 Ind. App. 63, 80 N. E. 975; *Van De Bogart* v. *Marinette, etc., Paper Co.* (1907), 132 Wis. 367, 112 N. W. 443; *Hartman* v. *Berlin & Jones Envelope Co.* (1911), 127 N. Y. Supp. 187, 71 Misc. 30. The particular or actual consequences need not be anticipated. *Davis* v. *Mercer Lumber Co., supra; Fine* v. *Interurban St. R. Co.* (1904), 91 N. Y. Supp. 43, 45 Misc. 587. That the accident could not have happened without the offending cause is sufficient to constitute it the proximate cause. *Tucker & Dorsey Mfg. Co.* v. *Staley, supra; Laidlaw* v. *Sage* (1899), 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216.

The statute is remedial, and should at least receive such construction as the reasonable intendment of its enactment discloses. As to certain designated machinery, it puts beyond inquiry by courts or juries, as to whether it should be guarded, the one condition only being whether this can be done without affecting the practical utility of the machinery. When its purposes are considered, can it make any difference how the injury arises, as to the proximate cause, if it could not have occurred if the machine had been guarded, and if so, is it not necessarily the efficient, producing cause where there is no intervening independent cause? This leads to the inquiry whether the slipping of appellee's hand from the lever was an independent cause, or a concurring cause, between which, and contact with the cogs, there was an immediate unbroken connection; and whether it needed to have been reasonably anticipated that such result might occur as did occur? Is it not the very object of the statute. to guard against injuries which the legislature has determined by the act itself are likely to occur by the operation of the designated machinery or appliances? That there was no intervening responsible agency is apparent, unless it can be said that the hand slipping was that agency. If the hand had not slipped the injury would not have occurred. If the cogs had been guarded it would not have occurred,

they therefore were concurring causes.  This being true what
is the legal sequence.   Cases in other jurisdictions under
different statutes mark the difference between statutes which
are mandatory, and such as leave it a question of fact
whether the particular appliance is dangerous, or it ought
to be reasonably apprehended to be dangerous; whether it
should be guarded, or is properly done, and whether the
failure is the proximate cause of the injury.   Such cases
are, *Koutsky* v. *Forster-Whitman Lumber Co.* (1911), 146
Wis. 425, 131 N. W. 1001; *Miller* v. *Kimberly & Clark Co.*
(1908), 137 Wis. 138, 118 N. W. 536; *Hartman* v. *Berlin
& Jones Envelope Co., supra; Callopy* v. *Atwood* (1908),
105 Minn. 80, 117 N. W. 238, 18 L. R. A. (N. S.) 593;
*McGinnis* v. *Rigby Printing Co.* (1906), 122 Mo. App. 227,
99 S. W. 4; *Glens Falls, etc., Co.* v. *Travelers' Ins. Co.*
(1900), 162 N. Y. 399, 56 N. E. 897.   Under our statute and
cases, it has been held that the duty to guard specified
machinery is mandatory, and the failure to guard is negli-
gence *per se.* · It has been held that slipping and falling,
by reason of which injury arises from appliances required
to be guarded, is not a proximate cause, and that the ab-
sence of the guard is the proximate cause, irrespective of
the agency which produces the injury, so long as it is
reasonably to be anticipateed as a result likely to ensue as
a natural result of the neglect or omission charged.   *Evans-
ville Hoop, etc., Co.* v. *Bailey, supra; Hartman* v. *Berlin &
Jones Envelope Co., supra; Martin* v. *Walker & Williams
Mfg. Co.* (1910), 198 N. Y. 324, 91 N. E. 798; *Rosenbaum* v.
*Shoffner* (1897), 98 Tenn. 624, 40 S. W. 1086; *Shields* v.
*Murdoch & Cameron* (1893), 20 Sc. Ses. Cas. (4th Ser.)
727.   It has been held in Minnesota, *Christianson* v. *North-
western, etc., Co.* (1901), 83 Minn. 25, 85 N. W. 826, 85
Am. St. 440, under a statute requiring the guarding of
specific machinery, that liability arises from the failure and
injury, even though the injury could not be reasonably
anticipated.   It is also held that similar statutes are in-

tended to embrace and cover injuries arising from the ordinary duties of the particular employment, and also occasional and exceptional duties in the course of the ordinary duties of the employment. *Koutsky* v. *Forster-Whitman Lumber Co., supra; Caspar* v. *Lewin* (1910), 82 Kan. 604, 109 Pac. 657; *Pittsburgh, etc., Brick Co.* v. *Fisher* (1909), 79 Kan. 576, 100 Pac. 507; *Callopy* v. *Atwood, supra; Cook* v. *Danahar Lumber Co.* (1910), 61 Wash. 118, 112 Pac. 245; *Walker* v. *Newton Falls Paper Co.* (1904), 90 N. Y. Supp. 530, 99 App. Div. 47; *Hurley* v. *Atlantic, etc., Co.* (1910), 122 N. Y. Supp. 701, 138 App. Div. 642; *Hartman* v. *Berlin & Jones Envelope Co., supra.* If every act concurring with the failure to guard, resulting in an injury, there being no intermediate responsible agency,

5. should be regarded as the proximate cause, the statute would be practically nullified. It is not the primary cause, but the producing cause, the cause but for which the injury could not have occurred that is the proximate cause. Proximate cause and primary cause are not synonymous, in the law of negligence. Primary action from which injury results, necessarily precedes in point of time, the injury itself, with respect to unguarded machinery, but it may not be in law the proximate cause of the injury, for the reason that the thing, or condition, but for which the injury could not have occurred, is deemed in law the proximate cause, as concurring with the primary act (if it is without fault) and as it necessarily exists at such time, they are concurring conditions, and the negligent act relates back to the primary act providing the sequence is unbroken, or there is no independent agency as the moving cause, and the responsible cause is the proximate cause, without reference to whether it is the first, or last, or intermediate in the chain of causation. *Lake Erie, etc., R. Co.* v. *Charman* (1903), 161 Ind. 95, 67 N. E. 923; *Cincinnati, etc., R. Co.* v. *Acrea* (1908), 42 Ind. App. 127, 82 N. E. 1009; *Merrill* v. *Los Angeles Gas, etc., Co.* (1910), 158 Cal. 499,

111 Pac. 534, 31 L. R. A. (N. S.) 559, 139 Am. St. 134; *Travelers Ins. Co.* v. *Melick* (1894), 65 Fed. 178, 184, 12 C. C. A. 544, 27 L. R. A. 629; *Pielke* v. *Chicago, etc., R. Co.* (1889), 5 Dak. 444, 41 N. W. 669; *Kelsey* v. *Chicago, etc., R. Co.* (1890), 1 S. Dak. 80, 45 N. W. 204; *East Tennessee, etc., R. Co.* v. *Kelly* (1892), 91 Tenn. 699, 20 S. W. 312, 17 L. R. A. 691 and note, 30 Am. St. 902 and note; *Troy* v. *Cape Fear, etc., R. Co.* (1888), 99 N. C. 298, 6 S. E. 77, 6 Am. St. 521 and note.

We think the unguarded cogs must be regarded as the proximate cause of the injury and not the slipping of appellee's hand, and that contributory negligence is 6. not shown as a matter of law by a finding that the hand slipped from the lever and was caught in the cogs, but that the latter question is one for the jury, and the finding by the general verdict is in favor of appellee on that question. If this were not the correct rule, it would be difficult to perceive what object the statute could have had if it were not to guard against such accidents as the one described here. It is alleged in the complaint that the hand could not, and would not have been caught had the machine, cogs, etc., been properly guarded and protected. Resolved to its simplest statement, it is, that if the hand had not slipped, or the cogs had been guarded, the accident would not have occurred, with the failure to guard negligence *per se,* and the burden of the claim of negligence of appellee is on appellant, and that question is one for the jury. *Balzer* v. *Waring, supra.*

The sole allegation of the complaint upon the subject of the character of his injuries and damages, is, that his hand was "torn, and lacerated in such manner as to 7. destroy the usefulness thereof, and to necessitate the amputation of the third and fourth fingers, and to render him a cripple for life, to his damage in the sum of fifteen thousand dollars." There is evidence that the cogs did not always catch and mesh promptly, and on the occa-

sion of the injury, and while trying to reverse the lever under these conditions, the hand of appellee slipped from the lever into the cogs. There is evidence that appellee was taken to his doctor, and to the hospital, and his fingers were amputated; but no evidence that he incurred any expense for physicians or hospital services of any kind; and the only evidence as to the question of loss of time is that he had not been able to "work a machine" since his fingers were taken off; that he had worked from April 1, until July in the boring mill, and his wages were eighteen and one-half cents an hour at that work, and he was twenty-six years of age. Before this employment he had been engaged in farming, and at work in furniture factories and places where there was no machinery; since the injury he had tried to do a little carpenter work, but could not use a hammer well enough to hold a job. The court instructed the jury, by charge No. 16, in part as follows, upon the subject of damages. "You may take into consideration the effect, if any, of any such injuries upon his ability to pursue his usual business in the future, only as shown by the evidence. The expense, if any, necessarily contracted, or incurred, in the treatment of any such injuries, and loss of time, if any, resulting as a direct effect of any such injuries. And from the consideration of the elements herein enumerated, only as shown by the evidence, you may assess his recovery at such amount as will compensate him," etc. Appellant attacks this instruction as erroneous, and harmful, as covering elements neither alleged in the complaint, nor shown in evidence, both as to loss of time, and expense incurred, under the rule in *Cleveland, etc., R. Co.* v. *Case* (1910), 174 Ind. 369, 376, 91 N. E. 238, and cases cited. Appellee concedes that loss of time is not directly shown, and asserts that the fact of treatment was inferable from the character of the injuries, and asserts that he made no claim for loss of time or expense, and the recovery, $1,500, is not such as to indicate any injury to appellant from the

instruction, and admits that there is no evidence of loss of time, or expense incurred, hence he argues that the instruction is so qualified, in its restriction to the evidence on the subjects, that as there was no evidence, the jury could not have been misled. There was no objection to the evidence which we have set out, so that the case does not fall within the rule of *Union Traction Co.* v. *Sullivan* (1906), 38 Ind. App. 513, 76 N. E. 116, or the case of *American Car, etc., Co.* v. *Clark* (1904), 32 Ind. App. 644, 70 N. E. 829, where there was an instruction in peremptory phrase that "you will take into consideration  *  *  *  expenses incurred for services of a physician  *  *  *  and nursing and medicine," where there was no evidence of either. The instruction in the Case case in one respect was the same as here, viz., that "you may take into consideration the loss of time, if any," occasioned by the injury, but in that case, there was no allegation, and no evidence of loss of time, and the instruction was held without the issues and the evidence. Here, there is an allegation that the usefulness of the hand was destroyed, and he was rendered a cripple for life, but no proof of the time lost, and no basis upon which to assess special damages for loss of time. The general result of the injury is included in the general allegation, and the complaint was doubtless broad enough under the rule in *Indiana Car Co.* v. *Parker* (1884), 100 Ind. 181; and *Pittsburgh, etc., R. Co.* v. *Lynch* (1909), 43 Ind. App. 177, 87 N. E. 40, and cases there cited, to authorize the proof of loss of time, and expense of treatment, where the evidence of such loss or expense is admitted without exception, and the complaint should then be deemed amended, and if the rule is any broader than as thus qualified, those cases may well be doubted in that particular.

The phrase, "if any," and "only as shown by the evidence," as applied to the question of treatment, cannot be referable to lack of evidence as to an obligation therefor

"contracted or incurred," for there is evidence that
7. an implied liability was incurred from the rendition
and acceptance of services.    In other words, to say
that damages may be assessed for certain named expenses,
not alleged in the complaint, if the evidence shows them to
have been "contracted or incurred," and the evidence shows
that they were incurred, but their amount or value is not
shown, is to authorize the jury to consider them, unless it
can be said that if there is no evidence of their value, there
is no basis for their consideration, and the instruction is
therefore harmless.    That the jury had no right to consider
loss of time, or expenses "contracted or incurred" for treat-
ment under the evidence is conceded, but how is the court
to know under this instruction, that they were not.    The
jury could infer as a fact, that there had been some loss of
time, for it affirmatively appears that appellee had tried
at least one kind of work, and could not keep a place, and
also presumptively, that he had incurred some liability for
treatment.    There being such evidence as to raise the impli-
cation of liability for physician and hospital services, and
no evidence as to their value, the instruction that the jury
may take into consideration "the expense *if any*, necessarily
contracted, or incurred, in the treatment of any such inju-
ries  *  *  *  and from the consideration of these ele-
ments only as shown by the evidence," leaves the jury to
consider the question with no basis for fixing the damages.
The jury would naturally understand under the evidence
as it stands, that appellee was liable for these services; cer-
tainly they would not naturally understand the negative,
that he was not liable for them.    We cannot say that this
improper and speculative element did not enter into the
verdict, and the instruction is therefore presumptively
harmful.    *American Car, etc., Co.* v. *Clark, supra; Cleve-
land, etc., R. Co.* v. *Case, supra; Miller* v. *State* (1910), 174
Ind. 255, 91 N. E. 930; *Timmons* v. *Kenrick* (1913), 53 Ind.

App. 490, 102 N. E. 52; *Neeley* v. *Louisville, etc., Traction Co.* (1913), 53 Ind. App. 659, 102 N. E. 455.

On the trial, appellee over objection was permitted to show that guards were placed over the cogs after the accident for the declared purpose of showing that they could be guarded without impairing the efficiency of the machine, and the jury was instructed that the testimony was only admitted for that purpose, "and you shall not take it or consider it in any other light. It is no evidence or any admission of any negligence on the part of the defendant." There was no opinion evidence of the practicability of guarding the cogs, but there was before the jury in addition to a minute oral description of the machine and its operation, and the cogs and their operation, an accurate drawing of the machinery, with accurate measurements shown of distances, sizes of parts, their relation to and distance from each other, and from the point of handhold on the lever. From such evidence the jury was as well qualified to form an opinion as to the practicability of guarding the cogs as witnesses could be. *Inland Steel Co.* v. *Ilko, supra.* A direct interrogatory, as to practicability, would be asking the witness as to the ultimate question in issue, and doubtless in itself improper. *Beery* v. *Driver* (1906), 167 Ind. 127, 76 N. E. 967; *American Tel., etc., Co.* v. *Green* (1905), 164 Ind. 349, 73 N. E. 707; *Johnson* v. *Anderson* (1896), 143 Ind. 493, 42 N. E. 815; *Brunker* v. *Cummins* (1892), 133 Ind. 443, 32 N. E. 732; *Elkhart, etc., R. Co.* v. *Waldorf* (1897), 17 Ind. App. 29, 46 N. E. 88; 17 Cyc. 40.

The instruction that the evidence should be considered for one purpose only, was as mandatory as it could be, followed by the declaration that it was no evidence, or admission of any negligence on the part of appellant. True, if it was not admissible for any purpose, its admission would constitute reversible, if harmful error, but it must be borne

in mind that the failure to guard the specific machinery designated by the statute was negligence *per se,* and the evidence shows that it was unguarded. If a defense had been interposed that it was impracticable to guard, and there had been any conflict in the evidence however slight, so that the fact of subsequent guarding might have turned the scale, the admission would be presumptively harmful, but there is no conflict on the question, hence in the absence of any claim of impracticability to guard, with no conflict in the evidence, with the situation and drawing of the machine, which was simple in its mechanism and operation, before the jury, the fact of practicability to guard was so patent that evidence of subsequent guarding was harmless. These are the views of a majority of the court on the question. The writer is of the opinion that its admission was a prejudical error, notwithstanding the court's direction. Whether the cogs could be guarded without impairing the usefulness of the machine was a material issue in the cause, and while there is authority for the admission in other jurisdictions, the rule is not so in this State. *Sievers* v. *Peters, etc., Lumber Co.* (1898), 151 Ind. 642, 50 N. E. 877, 52 N. E. 399; *Board, etc.* v. *Pearson* (1891), 129 Ind. 456, 28 N. E. 1120; *Terre Haute, etc., R. Co.* v. *Clem* (1889), 123 Ind. 15, 23 N. E. 965, 7 L. R. A. 588, 18 Am. St. 303; *Columbia, etc., R. Co.* v. *Hawthorne* (1892), 144 U. S. 202, 12 Sup. Ct. 591, 36 L. Ed. 405.

The fact that a guard was put on after the accident, and that the efficiency of the machine was not thereby impaired, could not enlarge the previous duty if it existed, but the guards may have been put on without regard to the question whether the efficiency of the machine was materially impaired, to protect against future accidents such as is here presented, and irrespective of the statutory duty in this particular case, or beyond that duty, and such precaution ought not be construed as an admission of prior duty, and its admission is calculated to prejudice the jury.

For the error in giving instruction No. 16, a new trial must be granted, and it is so ordered.

Cox, J., does not agree that the giving of instruction No. 16 is sufficient cause for reversing the judgment.

NOTE.—Reported in 103 N. E. 738. See, also, under (1) 29 Cyc. 493; (2) 29 Cyc. 495; (3) 26 Cyc. 1134; (4) 26 Cyc. 1092; (5) 29 Cyc. 489; (6) 26 Cyc. 1482; (7) 13 Cyc. 237, 238; (8) 3 Cyc. 292, 444; (9) 26 Cyc. 1428; 38 Cyc. 1411, 1446. As to the doctrine of proximate cause, see 36 Am. St. 807.